I am respectfully requesting this court to issue an order so Mr. Calabretta can be re-sentenced. Pursuant to Johnson v. United States that was just decided and the government's concession that Mr. Calabretta is no longer a career offender. Therefore we believe that the sentence was unreasonable. And the authority that I am going to rely on is United States v. Booker. In United States v. Booker it says that the district court judge must, must come to a guideline calculation in order for the defendant to be sentenced correctly. In this case being a career offender Mr. Calabretta's guideline calculation was 188 months to 235. He is no longer a career offender therefore his guideline calculation is 108 to 131. So he got 120? He did your honor. What's wrong with that? We feel that if he was not perceived as a career offender and the guidelines being 108 to 131 in addition to he would qualify, not being a career offender, he would qualify for the November 2014 amendment. And he still does. If we deny this request you could still make that motion could you not? I don't believe so not as a career offender. I don't know if we find, I mean the government has conceded that Johnson applies here. Correct. So if we accept that concession there would be no reason why we wouldn't accept that concession and find that your client is not a career offender. But if we don't order resentencing you still have a 3582 motion available to you do you not? Yes we do your honor. Okay so what's wrong with that? There's nothing wrong with that but we would like the court to instruct the district court that the guideline range would be 108 to 131. Well if we say he's not a career offender wouldn't that make the guideline range that range? I mean the question would be you'd have to convince the court that they should apply the reduction by the November 14th change. That is correct your honor. That is correct. The government on page 28 of its brief quotes our Zabielski case. I'm not sure I'm saying that defendant's name right. And you don't respond to that in the reply brief so I just would like to get your response to that. The government says the court finds a sentencing error harmless when it is clear from the record that the district court decided to vary from the advisory guidelines such that the guideline error did not influence the sentence imposed. So government's position I take it is the court here made it clear it was given the sentence it thought was fair and appropriate and that really doesn't having said that under Zabielski you should be comfortable that that's the sentence he was going to get no matter what. What's wrong with that argument by the government? Well I think your honor when a district court judge is sentencing a defendant as a career offender and the guidelines being so high I think there is a certain prejudicial effect on the defendant. Yes the judge granted a 68 month variance based on a 188 month low end. And said I think this is the minimum fair sentence to do with the things that 3553 requires us to do right? Yes but being a career offender when you're looking at the entire picture you know I'm not saying this defendant is a model citizen he certainly is not. However when you're a career offender there's prejudices you know that you're trying to deter you know specific deterrence as much as well as general deterrence that the judge faced this decision on. But what about what Judge Shorten just said? I mean this isn't a district judge who just painted with a broad brush and said this is a bad guy as a career offender here it goes. I mean this is he very carefully went through the 3553A factors you know he went into a lot of detail and apparently he ended up in the right guidelines range. Why how's your prejudice or anything there? I would think if in essence the guideline range was 108 to 131 with a mandatory minimum of 5 years I believe the 3553A factors would have gone at least to the low end of the guidelines. Potentially lower and I don't know what the judge would do. I know the judge was it's a very good judge he did a careful analysis but I think when you're lowering the low end by 80 months I think that you know in my experience that sometimes the district court judges will go within the guideline range or lower than the guideline range now specifically on these the drug cases you know where there are mandatory minimums and I know the court knows better than I with all the changes in the law and potential more changes in the future. Is it fair to say that the defense and government are on the same page in saying in effect all the briefing about whether death by auto is manslaughter is at this point irrelevant because there can't be a career criminal finding on this guy's record since Johnson wipes out at least the alluding conviction as a predicate? I believe so. I think you'd have to ask the government that. But that's certainly your position. Yes and I've spoken to the government you know many times I believe that would be his position. So this case boils down to one thing and one thing only at this juncture and that's the prejudice question right? Yes as well as when the sentencing judge in Booker must come up with a correct guideline calculation and without being a career offender the correct guideline calculation is 108 to 131. But that's merely another way of saying there's prejudice right? Yes Your Honor. Yes. Okay. Thank you very much Your Honor. Thank you. Counselor, Mr. Sanders. Good morning. Good morning. Steve Sanders, Attorney General of the United States, the appellee in this matter. Your Honor, this court should affirm the district court's judgment because Mr. Calabretta has failed at the third step of the test for plain error to show that the classifying him as a career offender actually increased his sentence. Can we start where I finished with your opposing counsel there? Is everybody agreed that all the questions about whether or not he's a career criminal at this point are off the table? The government agrees with the defense that he's not a career criminal based on Johnson and the only question now is prejudice based on the sentencing. Is that correct? Except that with the caveat that the only question is there prejudice and if so is there a miscarriage of justice? There's two problems. Fair enough. There's two pieces left to play. That's correct. We agree. All right. Thank you. But I do take issue with something. Can I just ask you about the prejudice problem? I mean our Knight case says basically there's a presumption of prejudice in circumstances like this. Is that the case and how do you get around that? Knight does say that and we believe Knight has been overturned, not directly, but by a series of decisions issued after Knight. And although in my brief I cited three of them, and we've had a previous case before this court where we actually took on Knight's presumption and this court felt it wasn't necessary to address it, that was Perez. Keep your voice up, Mr. Sandberg. Sure. The Cotton case decided the year I think after Knight was decided, assumed that there was plain error and prejudice from the imposition of a sentence way above the maximums that were authorized by the charging document or the jury instructions and found that there was no miscarriage of justice there. That's the year after Knight. And then we have Booker, which renders the guidelines advisory. We have Marcus and Puckett all reinforcing that except for a limited category of cases, there's no such thing as a presumptively prejudicial error. Isn't there, haven't we sort of taken the position that there is not just in Knight but in Langford and in Wright also? I mean, in U.S. v. Wright, the judge had actually said, you know, I'd be giving you this sentence anyway, and we still sent it back and said, well, we don't know that that's the case. If you'd done it right or if it had been done correctly, we don't know what would come out here. And since we don't know that, we're going to go ahead and make it go through the process so that we can be confident that it was handled correctly and this really is how you would come out on this set of facts. Well, this Court did say that, but let me stress the difference between a preserved claim and an unpreserved claim. And that's where Zabielski and Flores, which Zabielski quotes approvingly, bear some real importance here. In a preserved case, the government must show, prove to this Court, that it's highly probable that the same sentence would have been imposed. And Judge Hardiman's opinion of Zabielski for the Court explained how the government can go about that. It's probably easiest to do when either the district court issues an alternative sentence and says that even if all these contested guidelines issues are wrong, this is the sentence I believe is warranted by the 3558 factor. Or I think another case would be if the district court varied downward all the way to the mandatory minimum and couldn't go any lower. I think that's pretty compelling proof that the guidelines calculations didn't affect the sentence. A plain error review is the defendant's burden, not just to say there's been an error here and it's likely, it's possible that it affected the sentencing. He has to show, with a specific showing of prejudice, how that designation caused him harm. And here, as the Honor's pointed out several times, the district court varied downward from the career offender range and never once mentioned the career offender provision after saying that it applied. Except the Court did say that the guidelines as calculated would allow for a sentence of 240 months, and he thought 120 months was sufficient. Exactly. But in doing so, the district judge stressed Mr. Calabretta's criminal history, meaning his convictions. His convictions and the conduct underlying them don't magically disappear just because they no longer qualify the career offender purposes. He still has two vehicular homicides, two victims that are dead because of his conduct, right, and an eluding conviction, and those are all fair grounds. Sure, but isn't that the very point about why one could make, or I don't want to put words in your opposing colleague's mouth, he'll get up here and say what he wants to say, but I'm assuming the response would be sort of like the briefing, which is it's impossible to know, and that's why cases like Langford and Wright and Knight all talk about you've got to do this the right way on the correct facts, because otherwise it's pure guesswork. You can't say that, oh, this would be the same. So even if the burden of proof is on them, that's the purpose of this sort of presumption, that if you've undermined the integrity of the sentencing process, we're going to presume that's a problem. I guess my question to you is are you saying that because we're on plain error review, that presumption just doesn't operate? Well, I can't really say that because Knight was a plain error case, and there's some pretty broad language at the beginning and the end of that opinion that seems to suggest that it doesn't just apply when there's a sentence that falls within an overlapping range. It applies in all cases of sentencing error on plain error review. What I'm saying to this Court is I believe that Knight's adoption of a presumption was, I would take issue, was likely wrong when it was adopted, but it's certainly wrong in hindsight with the benefit of four subsequent Supreme Court opinions. And in response to the statement you made, Judge Jordan, that it's impossible to know, if that's true, he can't meet his burden under prong three, because if it's impossible to know, in this case it's not from this circuit but other circuits that say if we don't know which party benefited or was harmed by the error, the defendant loses. Well, we certainly know he was harmed by the error, right? I mean, he was harmed by the error because whether he gets the benefit of the two-point reduction or not, it's clear if he's not a career offender, the guideline range is going to be substantially lower from the start, right? Correct. So, I mean, it's not a, oh, would it go up, would it go down? I mean, we know the guideline range is going to go down. It's just a question of how far it goes down, right? That's correct. But that's true in every case of sentencing error where there's a contested guidelines issue. The initial calculation of step one would have been different. The question for this Court is has the defendant proved that without, if the career offender designation hadn't applied, the district judge would probably have imposed a lower sentence. And on this record where he selects 120 months and says this is the minimum sufficient sentence, I don't think he can bear that burden. But it's at least unclear from the record as to whether or not the judge would have given 120 months if Calabretta had not been found to be a career offender. Well, wouldn't you agree with that? The district judge does not say in hoc verba, you know, this is without the career offender designation this is what I would have done. You're in the third prong of the plain error review talking about prejudice. I am. Okay. I'd like to get you to the fourth prong. And I'll get to it. May I just add one thing to my response to your question? Yes. And that is Flores is a case in which the government, there was a preserved claim of guidelines error. And this Court said even if we were to agree with all three of the errors that the defendant brought up, he got a sentence that's within the range that would have applied without all these enhancements, and that's sufficient to render this harmless. Now, if the government could meet its burden there, by logic, the defendant in a similar circumstance couldn't meet his burden of showing it's reasonably probable that he would have gotten a lower sentence. That's a very interesting position to take because what you're saying, in essence, is that even in a case like this where there was zero incentive to object, right, we're not talking about plain error in this sort of circumstance where, you know, you're going to get a heavy burden fall on you because you should have objected and you didn't. The Supreme Court of the United States had said that the error that develops here because of Johnson was off the table. Our own case law had said the career offender argument was off the table. And yet, so there was no incentive for this defendant to make the objection. Well, I disagree with that, Your Honor, because he had the incentive to object to the vehicular homicide predicate. He didn't make that objection at the time, but he had the same motive with respect to that predicate as he does now with respect to the alluding conviction. I guess the question I'm trying to ask you is, you seem to be suggesting that the defendant is in precisely the same position that the government was in in Flores, right? I mean, that's the argument you're making? I'm saying the result is similar. I don't think he's in precisely the same position because I agree that there the defense counsel took on the various enhancements and argued that the career offender provision didn't apply. But here, the defendant did make an argument at the district court level that he shouldn't be classified as a career offender for a different reason that's now rendered academic by Johnson, but that his vehicular manslaughter conviction wasn't sufficiently recent. So the district court certainly understood that there was an issue over the career offender provision. But not this issue, right? I guess that's the point I may be inartfully trying to get at. Nobody foresaw Johnson coming from the wings and knocking this out as a career offender matter. And so I guess maybe in a way this gets to what Judge Fischer was asking about. Is there a miscarriage of justice here if a legal point that nobody had the opportunity to think or argue about becomes relevant and the defense is told it doesn't matter, you don't get to talk about it? Because that's the government's position here. It doesn't matter that there's brand new law and that it dramatically reshapes what the guideline range would be. You don't get to talk about it. Is that just? He gets to talk about it, but he bears a burden, right? And our argument is that there's no miscarriage of justice here because he did not get a dramatically higher sentence that's anywhere near the career offender range, number one. Number two, the robust 3553A discussion in light of the circumstances of this offense and the defendant's background show that this is a just sentence. Well, Mr. Sanderson, you say he does get to talk about it. I guess it's true he gets to talk about it here, but he doesn't get to talk about it in front of the sentencing judge. That's the question I'm pointing to. I mean, the legal landscape has changed dramatically, and yet the government's position is he does not get to go in front of the sentencing judge and say, things are really different. He just doesn't get to do that because we should assume it's going to be the same. That's, in effect, the government's position, right? Our position is that he hasn't proved that it would be different. He does get the benefit of the 3582 motion that he wants to make because, as I pointed out in one of my letters, I think in a footnote, that if this court agrees that he's not a career offender but that he hasn't shown prejudice or miscarriage of justice, there need not be a plenary resentencing, but that holding plus our concession will become law of the case, and he will be able to throw that in front of the district judge and say, now that we have the Amendment 782, please exercise your discretion to give me something lower. Yeah, but to get there, to get where you want us to get to, we would have to hold that, one, he was not a career offender, and, two, that the sentence was procedurally and substantively reasonable. That's correct. Okay. And if we do that, would the district court then be able to seek the two-level reduction under Amendment 782? He would be entitled to move for it, and I did try to research this issue because it's a tricky one. What is it that the district court looks to to decide whether the defendant is a career offender or not? Is it the statement of reasons, or is it simply is a holding from this court sufficient to say he's no longer a career offender? That's why I ask you, if we said he's no longer a career offender, and if the sentence is reasonable, and the district court is looking at that, are they going to say, whoops, the Court of Appeals said he's no longer a career offender, but the Court of Appeals also said the sentence is procedurally and substantively reasonable. Right, but every defendant who files a 3582 motion, and they can be long after the original sentencing, comes in with an understanding that the sentence that was originally imposed, if it hasn't been disturbed, was procedurally and substantively reasonable. Okay. And then the only thing that the guidelines do is to circumscribe the downward movement of that sentence by two levels. I think the lowest the district court could go would be 87 months, at least for the Amendment 782. But I do want to reiterate, I think that Knight's presumption, I think, has been eroded by Supreme Court. I wanted to ask you about that. You said in Perez you directly took that on. In this case, are you directly taking it on, or? Well, to the extent this court – well, yes, I am, because I reread several times before this argument, including this morning, and as I said earlier, there is language. I see my time is up. May I finish my answer? Okay. There is language in Knight that is certainly broad enough as to suggest that in all plain error cases where there's been a guidelines error, there is a presumption, and it doesn't matter whether the ultimate sentence imposed was within an overlapping range or much lower than the erroneously calculated range, and we believe that Knight is no longer good law. We recognize, at least by my count, in three cases that the reliance on Knight – US v. Vasquez-Lebron, US v. Lankford, which was mentioned by Judge Jordan, and United States v. Wood. Since we've – if that statement is accurate, if we've recognized that post-Brooker, where does that put us on the Knight presumption? Well, I don't – and I'll have to check, and if I'm wrong on this, I'll certainly let the court know. I don't know that the government took on the Knight presumption in any of those cases. We sort of stumbled across it in the Perez briefing, even though I don't think it was raised by the defendant, and said this is a problem. We looked at the language. We looked at the subsequent decisions, especially Marcus and Puckett, which seemed to foreclose this kind of presumption. In your experience enough here before this court, can we do this as a panel? Yes. If intervening Supreme Court law has abrogated one of this court's decisions, you need not go en banc in order to recognize that. You're saying Booker was the case that was the intervening case? Well, it's a combination of Booker. I'd say Cotton, Booker, Marcus, and Puckett. And especially Puckett, which is a plea reach case where the government violated its obligation not to recommend a three-level reduction, and Justice Scalia's opinion for the court said you still have to show that you would have gotten a different sentence had the government adhered to its bargain. So when you say you still have to show you would have gotten a different sentence, since he was sentenced using the 188 to 235 range, and it's arguable that his true guideline range was 87 to 108 months, which leaves a gap in there of what, some 80 months from the bottom of the one he was in to the top of the one that he would have been in. Doesn't that, can that bear in our analysis about showing whether things would have been different? Just the very large disparity, doesn't that have some bearing on our analysis? Well, it might, but I disagree with the premise of your question that his range would have been 87 to 108. If his correctly calculated range at the time was 108 to 135. Except that, the 87 to 108 is assuming he got the benefit of the two-point downward that everybody else got, but he didn't because he was thought to be a career offender, right? So that seemed to me a fair assumption, but maybe we're getting into the same question about what would have happened. But there's still, even using the ranges you use, there is a very wide gap there, right, amounting to many years in prison. That's correct, and the district court recognized that if I sentence you at the high end of the career offender range, but he then says this is not appropriate for you, and in the statement of reasons said the very reason he's very downwardly varying, among other things, the nature and circumstances of the defendant, and to avoid unwanted sentencing disparities. So he clearly recognized that the career offender range was inappropriate for this defendant and this crime. And I guess my question to you is, doesn't that actually cut against the government and not for it? You make the point, and you're briefing in here, that very point, that this was the district court doing what it should, but if the district court is varying downward and saying these are too high, I've got to do something to recognize that I need to move away from this, doesn't that indicate that with different ranges, things would indeed be different? If the court isn't anchored to a higher range, with lower ranges, things will indeed be different. No, the mere possibility that the district court could impose a lower sentence isn't sufficient to meet his burden. Does it matter that this is a due process violation that Johnson points out? Johnson talks about this in terms of due process. It makes no difference. Because we're under plain error, and even if the guideline were a preserved claim and the guideline were valid, the error is still fundamentally a sentencing error. It's a step one error. And, sure, there's ways that it could be much clearer that the district judge would have imposed the same sentence, but we don't demand 100 percent certainty on plain error. All right. Okay, Mr. Sanders, we thank you for your argument. We'll have Mr. Marangelo back on rebuttal. Thank you. Just very, very briefly on this. The one point that I would want to make with respect for the sentencing guidelines that Judge Shorten made is that he would have had the benefit of the two points when you're sentenced. Prior to the amendment being implemented, certain drug cases or the drug cases that I were involved with actually got the two points, so you'd have to waive the appellate rights. One thing that every sentencing judge has to follow is they have to follow the guidelines. And in this case, the guidelines were one of the prongs. What's your answer to the assertion from Mr. Sanders that you have the burden to show that things would have been different, not just that they possibly could have been different, but that they would have been different? Well, when a judge uses his part of his analysis is to use the guideline calculation. When the guideline calculation was 188 to 235 months, as opposed to either 108 to 131, or in this case it would have been 87 to 108, then I think that that part of his analysis, that he had to use a high guideline calculation, is prejudicial to Mr. Calabretta, in addition to that he had to sentence him under the career offender. But Mr. Sanders says you were making assumptions there, or at least I understood that to be his argument. It's not good enough for you to say things might have been different. You have to say there would have been a different sentence, and here's something in the record I can point you to to show that the court would have given a different sentence. Is he wrong in that assertion? And if he's not wrong, what are you pointing to in the record to show it would have been different? I'm pointing to specifically the calculation and the prejudicial effect of any sentencing judge sentencing a career offender as opposed to not sentencing a career offender. In addition to that, Booker says you must come up with the correct guideline calculation, and in this case it was not. Okay. Thank you very much, Your Honors. Have a good day. I want to thank both counsel for the job well done, and we'll take a matter under advisement.